[Cite as *State v. Azali*, 2026-Ohio-2817.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 115501 |
| v. | : | |
| OMNISUN AZALI, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-660200-A

### *Appearances:*

Elliot Kolkovich, Special Prosecuting Attorney and
C. Richley Raley, Jr., Special Assistant Prosecuting
Attorney, *for appellee.*

Kimberly Kendall Corral, *for appellant.*

**PER CURIAM:**

{¶ 1} Defendant-appellant Omnisun Azali ("Azali") appeals the judgment

of the Cuyahoga County Court of Common Pleas, arguing that the trial court erred

by (1) dismissing his petition for postconviction relief; (2) deciding not to hold an

evidentiary hearing on his petition; and (3) failing to provide appropriate findings of fact and conclusions of law with its decision. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶ 2} Azali lived in Cuyahoga County, Ohio with his wife, Mwaka Azali ("Mwaka"), and their two children. On May 26, 2021, Azali and Mwaka were involved in a domestic dispute at their house that ended when Azali shot and killed Mwaka with a .40 caliber Glock pistol ("Glock"). Azali then called his mother and drove his two children to her house. His mother called 9-1-1 to report this incident while she was driving Azali back to his residence. After Azali returned to his house, the police arrested him.

{¶ 3} When the police entered the premises, they discovered Mwaka's body slumped over the couch in the family room. She had a gunshot wound on her right cheek; a gunshot wound on the back of her head; and a gunshot wound behind her right ear. The point at which the bullet struck her right cheek was later determined to be a contact wound, indicating that the muzzle of Azali's firearm was touching her face at the time it was discharged.

{¶ 4} The police located the Glock that was used to shoot Mwaka on the ground in the first-floor master bedroom but also discovered a second gun—a .380 Ruger pistol ("Ruger")—on an ottoman that was situated near to the couch where Mwaka's body was found. The police then found shell casings from the Glock and

the Ruger at the scene of the shooting in addition to several bullet holes at various locations in the family room.

{¶ 5} On June 3, 2021, Azali was indicted on one count of aggravated murder in violation of R.C. 2903.01(A), an unclassified felony; one count of murder in violation of R.C. 2903.02(A), an unclassified felony; one count of murder in violation of R.C. 2903.02(B), an unclassified felony; one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor; and two counts of endangering children in violation of R.C. 2919.22(A), first-degree misdemeanors. The first five counts in the indictment carried three-year firearm specifications pursuant to R.C. 2941.145(A). These charges were filed by a special prosecutor from the Summit County Prosecutor's Office.

{¶ 6} On June 3, 2021, the police interviewed Azali's seven-year-old son, V. He stated that he had seen a portion of the altercation between his parents. V. indicated that, after the initial shot was fired in the house, he ran into the backyard where his sister was located. However, V.'s testimony also indicated that he may have been in the garage while his parents were fighting and, at some point, told his grandmother that he was outside during the shooting.

{¶ 7} During the investigation, the police observed that Azali had security cameras installed on the outside of his house. These cameras were part of a Blink security system that uploaded video recordings to a cloud storage service maintained

under Amazon. Detective Phil Tschetter ("Detective Tschetter") sought to secure these recordings by sending a preservation letter to Amazon on May 28, 2021. When he did not receive a response from Amazon, he submitted another request using an online portal in January of 2022. Detective Tschetter was then informed that these types of recordings are generally retained for sixty days and that the footage requested from May of 2021 was no longer available.

{¶ 8} On November 23, 2022, Azali filed a motion to dismiss on the grounds that the State had failed to preserve the recordings from the Blink security system. The Defense asserted that this security camera footage was material evidence because it could have established when V. left the house and confirmed whether he was inside when the initial shot was fired. After hearing the arguments of the parties, the trial court denied the motion to dismiss.

{¶ 9} This matter proceeded to a jury trial that lasted from November 28, 2022 to December 9, 2022. The State called a total of seventeen witnesses, including Azali's son. V. testified that he saw his father get his gun from the master bedroom. He also said that, while his parents were arguing in the family room, he saw a gun in Azali's hands but did not see anything in his mother's hands. Similarly, he also reported seeing Azali pointing a gun at his mother but did not see his mother pointing a gun at Azali. On hearing the sound of a gunshot, V. ran from the house and into the backyard.

{¶ 10} On cross-examination, V. was questioned about what he had reported previously about his whereabouts during the shooting. He explained that

he had been in the garage when the incident "first started." (Tr. 578). V. also acknowledged that he had told his grandmother that he was outside when he heard shots and did not see anything. V.'s uncle later testified that V. had told him that Mwaka was shooting at Azali during the fight.

{¶ 11} Azali testified at trial and asserted that he had acted in self-defense. He stated that Mwaka slapped him while they were having an argument; that he picked her up in response; and that he then set her down on an ottoman. Azali testified that, while Mwaka was on the ottoman, she turned and picked up the Ruger that was sitting on the couch, leading them to struggle over control of the firearm. He said that, as they fought, the Ruger went off three times before it fell out of her hands. He testified that he left Mwaka's side so that he could locate the Ruger on the floor.

{¶ 12} Azali stated that, at this moment, he saw that Mwaka had located the gun near the couch and was lifting it up. In response, he pulled the Glock out of his belt and fired three shots at her in rapid succession as he closed the distance between them. He stated that he fired his gun because he believed that Mwaka was going to shoot him with the Ruger. He also explained that he had the Glock on his person because he had a concealed carry permit and was about to leave the house.

{¶ 13} The Defense also called an expert on military training to compare how Azali described his response to Mwaka and the training he would have received when he was in the army. At the close of evidence, the trial court granted a Crim.R. 29 motion for acquittal on the two charges of endangering children. The jury then

found Azali not guilty of aggravated murder but returned verdicts of guilty on the remaining five charges against Azali.

**{¶ 14}** On December 14, 2022, Azali appeared for sentencing. After the trial court concluded that his five convictions were subject to merger, the State elected to proceed on the conviction for murder in violation of R.C. 2903.02(A), an unclassified felony. The trial court ordered Azali to serve an aggregate prison term of twenty-one years to life. The trial court issued its judgment entry of sentencing on December 16, 2022.

**{¶ 15}** On January 9, 2023, Azali filed a notice of direct appeal from his judgment of conviction. His trial counsel did not represent him on appeal. On appeal, Azali argued that (1) his conviction was not supported by sufficient evidence; (2) the indictment should have been dismissed because the State's failure to preserve the Blink security camera recordings constituted a *Brady* violation; (3) the trial court erred in finding V. competent to testify as a child witness; and (4) the State's expert witness gave inappropriate ultimate issue testimony. *State v. Azali*, 2023-Ohio-4643, ¶ 7 (8th Dist.). On December 2, 2023, this Court decided Azali's direct appeal, overruled his four assignments of error, and affirmed his conviction. *Id.* at ¶ 97.

**{¶ 16}** On February 2, 2024, Azali timely filed a petition for postconviction relief ("petition") that raised eleven claims. On July 31, 2025, the trial court issued a judgment entry that dismissed his petition on the grounds that the claims raised

therein were barred by the doctrine of res judicata. The trial court did not hold an evidentiary hearing prior to deciding the petition.

{¶ 17} Azali filed his notice of appeal on August 29, 2025 and raises the following three assignments of error:

**First Assignment of Error**

**The trial court abused its discretion when it unreasonably denied appellant's petition, as the evidence presented meets the requisite standard under ORC § 2953.21/23.**

**Second Assignment of Error**

**The trial court abused its discretion as it acted unreasonably when it failed to hold an evidentiary hearing.**

**Third Assignment of Error**

**The trial court erred by failing to issue findings of fact and conclusions of law.**

*First Assignment of Error*

{¶ 18} Azali argues that the trial court erred by dismissing his petition for post-conviction relief.

Legal Standard

{¶ 19} "Postconviction relief is a collateral civil attack on a criminal judgment and is governed by R.C. 2953.21." *State v. Lewis*, 2026-Ohio-1202, ¶ 9 (8th Dist.). Under R.C. 2953.21(A)(1)(a)(i), a petition for postconviction relief may be filed by "any person who as been convicted of a criminal offense . . . and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of

the United States[.]"  To be timely, a petition must "be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the direct appeal of the judgment of conviction . . . ."  R.C. 2953.21(A)(2)(a).

{¶ 20} This process does not exist to provide a petitioner with "a second opportunity to litigate his or her conviction."  *State v. Magwood*, 2019-Ohio-5238, ¶ 8 (8th Dist.). Rather, this process exists to provide a petitioner with a vehicle to "present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting the issues is not contained in the record of the petitioner's criminal conviction."  *State v. Fields*, 2023-Ohio-4543, ¶ 10 (8th Dist.).  As a general matter, "issues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal . . . ."  *Id.* at ¶ 13.

{¶ 21}  When a petition for postconviction relief is filed, the trial court is to determine whether the petitioner has presented "substantive grounds for relief" by reviewing the contents of the petition; the record; any supporting affidavits or documentary evidence; and any other materials related to the proceeding.  *State v. Grier*, 2025-Ohio-2529, ¶ 5 (8th Dist.), citing R.C. 2953.21(D).  A petitioner has presented substantive grounds for relief where the petition

> is sufficient on its face to raise an issue that [the] petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case . . . .

*State v. Miller*, 2023-Ohio-3448, ¶ 55, quoting *State v. Milanovich*, 42 Ohio St.2d 46 (1975), paragraph one of the syllabus.

{¶ 22} "The petition need only allege sufficient operative facts that *if true*, would set forth a prima facie case that the petitioner's conviction rested on a deprivation of the petitioner's constitutional rights." (Emphasis sic.) *Miller* at ¶ 55. If a trial court finds that a petition sets forth substantive grounds for relief, this matter "shall proceed to a prompt hearing on the issues" raised by the petitioner. *Id.*, quoting R.C. 2953.21(F).

{¶ 23} Importantly, the doctrine of res judicata is applicable to petitions for post-conviction relief that are timely filed and "generally bars a convicted defendant from litigating a postconviction claim that was raised or could have been raised at trial or on direct appeal." *State v. Bethel*, 2022-Ohio-783, ¶ 17.

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgement, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. In applying this rule, the Supreme Court of Ohio has held that

> res judicata does not bar a postconviction ineffective-assistance-of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief. . . . The converse is that when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred.

(Citation omitted.) *State v. Blanton*, 2022-Ohio-3985, ¶ 2, citing *State v. Cole*, 2 Ohio St.3d 112, 113-114 (1982). Thus, if a petitioner had different counsel at trial

-9-

and on direct appeal, the claims raised in the petition must generally be "supported by evidence outside the record generated by the direct criminal proceedings" to avoid the bar imposed by res judicata. *State v. Kenney*, 2025-Ohio-4841, ¶ 15 (8th Dist.), quoting *State v. Monroe*, 2005-Ohio-5242, ¶ 9 (10th Dist.).

{¶ 24} However, "[e]xtrinsic evidence attached to the petition does not automatically defeat the res judicata bar." *State v. Jackson*, 2017-Ohio-2651, ¶ 54 (8th Dist.). Rather, "evidence submitted in support of the petition 'must meet some threshold standard of cogency. . . .'" *Fields*, 2023-Ohio-4543, at ¶ 13 (8th Dist.), quoting *State v. Coleman*, 1993 Ohio App. Lexis 1485, 21 (1st Dist. Mar. 17, 1993). This threshold cannot be met by presenting "evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *Fields* at ¶ 13, quoting *Coleman* at 21.

{¶ 25} Further, "[t]he evidence submitted with the petition must be competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial." *Jackson*, 2017-Ohio-2651, at ¶ 16 (8th Dist.).

> Where the evidentiary document is an affidavit, 'a trial court should give due deference to affidavits sworn under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact.'

*State v. Duncan*, 2025-Ohio-2456, ¶ 19 (8th Dist.), quoting *State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999). "Generally, self-serving affidavits submitted by a defendant in support of his [or her] claim for postconviction relief are insufficient

to trigger the right to a hearing or to justify granting the petition." *Duncan* at ¶ 19, quoting *State v. Osborn*, 2019-Ohio-2325, ¶ 25 (8th Dist.).

{¶ 26} While ineffective assistance of counsel claims should generally be raised on direct appeal from a criminal conviction, such claims can be raised in a petition for postconviction relief where the allegations are founded on evidence not in the trial record. *Jackson* at ¶ 59. To establish an ineffective assistance of counsel claim, the petitioner must establish

> (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different.

*State v. Redmond*, 2024-Ohio-3404, ¶ 24 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

{¶ 27} In this analysis, "a court must give great deference to counsel's performance and 'indulge a strong presumption' that counsel's performance 'falls within the wide range of reasonable professional assistance'" since "there are 'countless ways to provide effective assistance in any given case[.]'" *Redmond* at ¶ 25, quoting *Strickland* at 689. As a result, matters that fall within the realm of trial strategy or debatable trial tactics will not, as a general matter, constitute deficient performance. *Magwood*, 2019-Ohio-5238, at ¶ 16 (8th Dist.).

{¶ 28} "When a postconviction-relief petition alleges ineffective assistance of counsel, the petitioner 'bears the initial burden to submit evidentiary material'" to substantiate the claim. *Grier*, 2025-Ohio-2529, at ¶ 6 (8th Dist.), quoting *State*

-11-

*v. Jackson*, 64 Ohio St.2d 107, at syllabus. "[T]o merit a hearing, the petition must have raised 'a triable issue of fact, supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him.'" *Redmond* at ¶ 26, quoting *State v. Bunch*, 2022-Ohio-4723, ¶ 37.

**{¶ 29}** Finally, if the trial court made a determination that was based upon incorrect reasoning, the judgment may still be affirmed on appeal if it is legally correct on other grounds. *State v. Howard*, 2022-Ohio-3739, ¶ 14 (8th Dist.). An appellate court is to affirm such a judgment because the "trial court's error is not prejudicial when it achieves the right result for the wrong reason." *State v. Gulley*, 2015-Ohio-3582, ¶ 12 (8th Dist.).

### Standard of Review

**{¶ 30}** An appellate court reviews the disposition of a petition for post-conviction relief for an abuse of discretion. *State v. Jones*, 2024-Ohio-6032, ¶ 9 (8th Dist.). An abuse of discretion is present where the trial court's determination is arbitrary, unreasonable, or unconscionable. *State v. Dye*, 2021-Ohio-207, ¶ 33 (8th Dist.). In applying this standard, an appellate court is not to substitute its judgment for that of the trial court. *State v. Fluker*, 2026-Ohio-1278, ¶ 102 (8th Dist.).

### Legal Analysis

**{¶ 31}** In this case, the trial court found that the eleven claims in Azali's petition were barred by res judicata. Azali reasserts these eleven claims on appeal and argues that the trial court abused its discretion in dismissing his petition. As

Azali notes in his petition, he was represented by new counsel on direct appeal from his conviction. *See Blanton*, 2022-Ohio-3985, at ¶ 2. Thus, as we examine Azali's petition, our primary inquiry will be into whether his claims for relief rely on evidence from outside the record. *Id*.

**{¶ 32}** *First Claim*: Azali argues that his trial counsel was ineffective for failing to call an expert witness to testify about some of the possible side effects of an HIV medication that Mwaka had been prescribed. To support this argument, Azali submitted a scholarly article that discussed this medication and two notes that Mwaka had purportedly written.[1]

**{¶ 33}** While Azali asserts that his trial counsel should have introduced expert testimony about this medication at trial, his petition did not identify an expert witness who should have been called or include an affidavit from any expert in this field. The general findings in the scholarly article cannot, by themselves, establish what an expert would have said about this case or the two notes that Mwaka had purportedly written. *See State v. Krzywkowski*, 2004-Ohio-5966, ¶ 24 (8th Dist.).

**{¶ 34}** Azali's petition provides no indication as to what opinions an expert witness could have offered on the subject of Mwaka's HIV medication. In the absence of such information, Azali has failed to establish that an expert in this field

---

[1] The notes contained lists with the following statements: "Lying about my husband"; "How to have better communication"; "How to be more appreciative"; "How to control my emotions when I feel hat [sic]"; "What to do if I feel hat [sic] and frustrated"; "Help with lying about my husband"; "Have better communication"; "To be more appreciative to other people"; "How to control my emotion when I feel hat [sic]." (Doc. 74, Ex. 13-14). Azali's affidavit stated that he discovered these notes in his house while he was on bond. Beyond this representation, no other context was provided for these notes.

could have offered testimony that supported his defense and that his trial counsel was deficient for failing to call an expert witness on this subject. *State v. Kaufhold*, 2021-Ohio-4539, ¶ 25 (12th Dist.); *State v. Stedman*, 2004-Ohio-3298, ¶ 32 (8th Dist.) (The decision to call an expert witness is generally a matter of trial strategy.).

{¶ 35} Similarly, when a petition "fails to identify the expert witness who should have been called or what the expert would have said," the "court has no way of knowing how an expert would have aided [his or her] defense." *Kaufhold* at ¶ 25, quoting *State v. Long*, 2021-Ohio-3651, ¶ 25 (12th Dist.). As a result, Azali can only speculate about the impact that expert testimony on this subject would have had on the outcome of his trial. Thus, he has not raised triable issues of fact on this ineffective assistance of counsel claim. Since Azali did not set forth operative facts that establish substantive grounds for relief, his arguments regarding the first claim in the petition are without merit.

{¶ 36} *Second Claim*: Azali asserts that his trial counsel was ineffective for citing financial constraints as the reason for not calling an expert from the DNA Diagnostic Center ("DDC") to testify and for not producing her report. As the basis for this claim, he points to the following exchange from a pretrial conference that was held on October 22, 2022:

> Judge Cosgrove: . . . Mr. Saffold [defense counsel], what's the hang-up with getting this report to the State?
>
> Mr. Saffold: There's no hang-up, Your Honor. . . . We intend to have it within the rule. I indicated not on the record but at the last discussion I simply didn't have the report. I wasn't holding on to it

-14-

and sandbagging. I just didn't have the report yet. It hadn't been completed.

. . .

Judge Cosgrove: Okay. What is this expert? First of all, it's a DNA expert, is that what you're saying?

Mr. Saffold: Yes, Your Honor. I don't mind saying on the record that I had [a] conversation with the government. I've outlined for them *I don't think there's going to be any profound information coming from our expert*, but we'll get a basic report like we would in any other case. I just haven't gotten it. *Part of it, frankly was financial.*

Judge Cosgrove: Okay. The DNA, what is being tested as far as the DNA?

Mr. Saffold: There was DNA of both the victim of the homicide and the defendant found on various guns that were located, which becomes how could it have gotten there, the multiple ways DNA lands on items.

Judge Cosgrove: . . . Without revealing your secret strategy, can you tell me, just give me some idea, when you say self-defense, what are you talking about?

Mr. Saffold: To keep it very simple, Your Honor, there are multiple weapons and multiple weapons fired within this room.

Judge Cosgrove: Was there—I mean besides the victim, was there anyone else who was shot?

Mr. Saffold: No. This is—It's not a whodunit. It's just a question of whether or not Mr. Azali fired in self-defense. There's gunshot residue on his hands. There are no secrets here. There is gunshot residue on his hands, and there is gunshot residue on the hands of the victim, the deceased I should say.

(Emphasis added.) (Tr. 30-33). The trial court then gave the parties until November

4, 2022 to exchange any remaining expert reports.

-15-

{¶ 37} In his petition, Azali asserted that "the record is entirely void of any strategic reason which may have governed the decision not to produce a report or call the retained expert witness. Rather the only reasoning offered for the absence of the report is 'financial.'" (Doc. 74). Azali also submitted a receipt with his petition that indicated he had paid the DDC for this report in July of 2022 in order to establish that financial constraints were not a valid reason for the Defense not to call this expert or produce her report at trial.

{¶ 38} However, the exchange that Azali identified took place over a month before his trial. In these statements, his trial counsel only indicated that his receipt of the DDC's report had been delayed, in part, due to an unspecified financial situation. This exchange does not indicate that the DDC expert was not ultimately called to testify at trial because of financial constraints. Further, trial counsel's statements did indicate that he did not anticipate "any profound information" in the DDC report given the basic facts of this case. (Tr. 31).

{¶ 39} While Azali asserts that his trial counsel was ineffective for failing to call the DDC expert at trial, he did not submit a copy of the report or an affidavit from this expert with his petition. *See State v. Boyd*, 2023-Ohio-4725, ¶ 24 (7th Dist.). In the absence of evidence that establishes the DDC expert could have provided relevant testimony that supported his defense, Azali has not demonstrated how his trial counsel was deficient for deciding not to call this expert to testify. *See Kaufhold*, 2021-Ohio-4539, at ¶ 25 (12th Dist.).

-16-

**{¶ 40}** At trial, the State called a forensic scientist from BCI who testified that Mwaka and Azali's DNA was found on the Ruger and the Glock. The Defense then extensively cross-examined this forensic scientist. Azali then gave testimony that confirmed he had physical contact with the Ruger and the Glock during the incident. Given his own statements at trial and his failure to provide any evidence from the DDC expert, Azali has not explained how additional testimony about the DNA on the firearms could have affected the outcome of his trial. *See State v. Rutherford*, 2019-Ohio-3827, ¶ 24 (4th Dist.).

**{¶ 41}** In summary, the decision to cross-examine the State's expert witness instead of calling an alternative expert witness is generally considered a matter of trial strategy and will not typically constitute ineffective assistance of counsel. *State v. Carswell*, 2025-Ohio-4568, ¶ 25 (6th Dist.); *State v. Meyerson*, 2023-Ohio-708, ¶ 31-32 (9th Dist.). Azali's petition fails to establish the existence of a triable issue of fact on this ineffective assistance of counsel claim. Since Azali did not set forth operative facts that establish substantive grounds for relief, the arguments regarding the second claim in the petition are without merit.

**{¶ 42}** *Third Claim*: Azali argues that his Sixth Amendment right to autonomy was violated when his trial counsel did not pursue his (Azali's) preferred trial strategy of calling the DDC expert to testify. The Sixth Amendment to the United States Constitution guarantees the right of the accused "to have the Assistance of Counsel for his defence." Since this provision refers to the "assistance" of counsel, the accused is ultimately left "as the master of his own

defense." *State v. Norman*, 2026-Ohio-779, ¶ 56 (11th Dist.), quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, fn. 10 (1979). As a result, the Sixth Amendment has been held to secure a right to autonomy for the accused. *Crawford v. Mississippi*, 146 S.Ct. 33, 37 (2025).

{¶ **43**} In *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018), the Supreme Court of the United States described this right to autonomy as follows:

> Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.' *Gonzalez v. United States*, 553 U. S. 242, 248 . . . (2008) (internal quotation marks and citations omitted). Some decisions, however, are reserved for the client— notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. . . .
>
> Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category. Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*.

(Citation omitted.) (Emphasis sic.) *Id*. at 422. This right is concerned with "a client's autonomy, not counsel's competence." *Id*. at 426. A "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural' . . . ." *Id*. at 427.

{¶ **44**} Azali relies on *McCoy* to argue that his trial counsel's apparent decision not to call the DDC expert violated his Sixth Amendment right to

-18-

autonomy.  In an affidavit filed with his petition, Azali averred that he had "insisted on proceeding with a DNA expert" and "never agreed to a trial strategy in which we did not use our DNA expert."  (Doc. 74, Ex. 17).

{¶ 45} However, *McCoy* expressly places the decision of "what arguments to pursue" within "the lawyer's province[.]"  *McCoy,* 584 U.S. at 422.  In making this statement, the Supreme Court directed attention to the following portion of its prior decision in *Gonzalez v. United States*:

> Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial. These matters can be difficult to explain to a layperson; and to require in all instances that they be approved by the client could risk compromising the efficiencies and fairness that the trial process is designed to promote.

*Gonzalez v. United States*, 553 U.S. 242, 249 (2008); *McCoy* at 423.  Thus, "the decision to call a witness rests within the province of the lawyer. . . ."  *United States v. Poncedeleon*, 2025 U.S. App. Lexis 20246, *6 (2d Cir. Apr. 11, 2025).

{¶ 46} In the case presently before us, trial counsel's apparent decision not to call the DDC expert as a witness was a matter that fell within the "lawyer's province" of "[t]rial management."  *McCoy* at 422.  Even assuming that the relevant statements in his affidavit are true, Azali has identified a disagreement over how to attain the objective he chose for his defense rather than a disagreement over the objective of his defense.  *See United States v. Audette*, 923 F.3d 1227, 1236 (9th Cir. 2019).  Thus, he has not presented evidence that suggests the type of structural

-19-

error identified in *McCoy* occurred in this case. Since he did not set forth operative facts that establish substantive grounds for relief, the arguments regarding the third claim in his petition are without merit.

{¶ 47} *Fourth Claim*: Azali argues that his trial counsel violated his Sixth Amendment right to autonomy by failing to call an expert witness to testify about the possible side effects of Mwaka's HIV medication. In his affidavit, Azali averred that he "stressed the importance of . . . [having] an expert on the side effects of Mwaka's medication, and the introduction of Mwaka's 'notes. . . .'" (Doc. 74, Ex. 17). Assuming these statements in his affidavit are true, Azali merely indicates that he disagreed with his trial counsel's apparent decision not to call an expert witness to testify about Mwaka's HIV medication.

{¶ 48} Following our analysis of Azali's third claim, we conclude that, in the case presently before us, this apparent decision not to call an expert witness was a matter that fell within the "lawyer's province" of "[t]rial management." *McCoy*, 584 U.S. at 422. "Because this amounts to a disagreement over what argument to pursue, *McCoy* does not apply." *Walker v. Douglas*, 2025 U.S. App. Lexis 19820, *7 (6th Cir. Aug. 5, 2025). Thus, Azali has not presented evidence that suggests the type of structural error identified in *McCoy* occurred in this case. Since Azali did not set forth operative facts that establish substantive grounds for relief, the arguments regarding the fourth claim in his petition are without merit.

{¶ 49} *Fifth Claim*: Azali argued that his trial counsel was ineffective for failing to secure a jury view of the house where Mwaka was fatally shot. On

-20-

August 9, 2022, his trial counsel filed a motion that requested permission for a jury view of the house. The record indicates that Azali's house was sold after Mwaka's death and that the new owners occupied the premises by the time of the trial. The jury view was discussed at pretrial hearings on October 20, 2022, November 9, 2022, and November 15, 2022. During each of these discussions, Azali's trial counsel indicated that the necessary arrangements for a jury view had not yet been made.

**{¶ 50}** On November 28, 2022, the trial court ultimately decided to deny the request for a jury view.[2] In its decision, the trial court noted that Azali's trial counsel had not obtained permission from the new owner for a jury view; that the parties had ample photographic and video evidence that depicted this living area as it existed at the time of the fatal shooting; and that "the home and the position of the furniture" was likely different after the sale of the house. (Doc. 39).

**{¶ 51}** In his petition, Azali included an affidavit in which a private investigator stated that the new owners of Azali's house told her that "no one from the county or from the courts" had contacted them about a jury view of the premises. (Doc. 74, Ex. 21). As an initial matter, "[a]ffidavits based on out-of-court statements relayed through an affiant from a person never placed under oath or subjected to cross-examination may properly be found to be not credible and deserving of little weight." *State v. Canas*, 2025-Ohio-1471, ¶ 33 (10th Dist.).

---

[2] Judge John Haas initially granted Azali's request for a jury view on August 15, 2022. However, Judge Haas retired on August 30, 2022. Judge Patricia Cosgrove was then assigned to this case and ultimately denied the request for a jury view on November 28, 2022.

{¶ 52} Even considering the contents of this affidavit, Azali has not presented any evidence that establishes a reasonable probability exists that the outcome of his trial would have been different if a jury view had been held. At trial, the State and Defense introduced video recordings, photographs, and schematic diagrams of the scene of the incident for the jury to examine. *See State v. Gaston*, 2008-Ohio-1856, ¶ 34 (6th Dist.). These videos and pictures were taken before the house was sold and depicted the condition of the living area at the time of the incident.

{¶ 53} In denying the motion for a jury view, the trial court noted that the condition of the living area had likely been altered substantially after the new homeowners took occupancy of the premises. In contrast to the available video and photographic evidence, the trial court found that a jury view of the house would "not accurately depict the scene on the day of the shooting" even if the new homeowners were to grant permission for a jury view. (Doc. 39). Even considering the private investigator's affidavit, Azali's petition still fails to establish the existence of a triable issue of fact on this ineffective assistance of counsel claim. Since Azali did not set forth operative facts that establish substantive grounds for relief, the arguments regarding the fifth claim in the petition are without merit.

{¶ 54} *Sixth Claim*: Azali argues that his trial counsel was ineffective for failing to ensure review of the records at the Cuyahoga County Department of Children and Family Services ("DCFS") that were related to his (Azali's) two children. In this case, Azali served DCFS with subpoenas that sought any records

-22-

in its possession that were related to his two children. In response, DCFS filed motions to quash these subpoenas, citing concerns about confidentiality.

{¶ 55} On August 15, 2022, the trial court denied the motions to quash and ordered DCFS to turn over the requested records for an in-camera inspection. On September 1, 2022, DCFS filed a notice of submission of the requested records. At a hearing on October 20, 2022, Azali's trial counsel provided a description of the relevant materials that could potentially be in these records. The trial judge confirmed that the records had been received and indicated that she would review these materials.

{¶ 56} In his petition, Azali points out that the record contains no further discussion of this matter. He also averred in an affidavit that the subject of the DCFS records was not revisited after the October hearing. However, these statements only confirm what is apparent from the trial record and are, therefore, merely cumulative to the evidence that was available to him at the time of his direct appeal. Since Azali could have raised this argument on direct appeal from his conviction, the trial court did not err in concluding that this claim was barred by res judicata. Thus, the arguments regarding the sixth claim in the petition are without merit.

{¶ 57} *Seventh Claim*: Azali argues that a juror fell asleep during his two-week-long trial and that this juror misconduct violated his right to due process. In his affidavit, Azali identifies a portion of the transcript in which his trial counsel notified the trial court that he believed that three jurors had fallen asleep. He then

-23-

identifies several portions of the record where the trial court had an "off the record" discussion with counsel or ordered a break and avers that the real purpose of these actions was to rouse sleeping jurors. (Doc. 74, Ex. 17).

{¶ 58} As an initial matter, Azali's argument is partially based on a transcript that was part of the original trial record. Further, in evaluating the credibility of an affidavit submitted in support of a petition for postconviction relief, courts will generally consider the following factors:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*State v. Trujillo,* 2025-Ohio-2069, ¶ 20 (8th Dist.), quoting *State v. Calhoun*, 86 Ohio St.3d 279, 291-292 (1999). If "a trial court 'discounts the credibility of sworn affidavits,' it should 'include an explanation of its basis for doing so.'" *State v. Blanton*, 2022-Ohio-3985, ¶ 98, quoting *Calhoun* at 285.

{¶ 59} Besides the references to the trial transcript, the only evidence presented with the petition on this issue is a self-serving affidavit from the defendant. The trial judge who evaluated Azali's affidavit also presided over his jury trial. She stated in the judgment entry that she did not observe this issue on more than one occasion. As the person who ordered the breaks or held the discussions that Azali identifies in his affidavit, the trial judge was able to discount

-24-

Azali's claims about the scope of this alleged juror misconduct based on her personal knowledge.

{¶ 60} In the absence of the discounted representations in Azali's affidavit, the remaining evidence on this matter is limited to the portions of the trial record that were identified in his petition and that could have served as the basis for raising this challenge on direct appeal from his conviction. Thus, the trial court did not err in ultimately concluding that this issue was barred by res judicata. Since Azali did not set forth operative facts that present substantive grounds for relief, the arguments regarding the seventh claim in the petition are without merit.

{¶ 61} *Eighth Claim*: Azali argues that the docket does not contain an entry appointing the special prosecutor from the Summit County Prosecutor's Office to oversee this case. Based on this observation, he asserts that the special prosecutor was not properly appointed and, as a result, did not have the authority to prosecute this action in Cuyahoga County.[3] However, Azali points to a copy of the trial docket that he attached to his petition as the basis of this argument. He does not identify any matters outside of the trial record to support this claim.

{¶ 62} Since his assertions are based entirely on the entries listed in the trial docket, this exact challenge could have been raised on direct appeal based upon the original trial record. *See State v. Leavell*, 2018-Ohio-3211, ¶ 6 (6th Dist.) (An

---

[3] In this case, the trial docket begins with an indictment that was filed by the special prosecutor. During oral arguments, appellate counsel for the State of Ohio noted that the special prosecutor was appointed by a miscellaneous order. He then stated that a miscellaneous order that was issued pre-indictment would likely appear in the miscellaneous docket in the court of common pleas and would not likely appear in the trial docket since the case had not yet been initiated by the filing of an indictment.

argument asserting that a special prosecutor was improperly appointed could have been brought on direct appeal.). As a result, the trial court did not err in concluding that this argument was barred by res judicata. Thus, the arguments regarding the eighth claim in the petition are without merit.

{¶ 63} *Ninth Claim*: Azali asserts that the Cuyahoga County Prosecutor's Office ("CCPO") engaged in prosecutorial misconduct by participating in this case. To substantiate this claim, Azali submitted an affidavit from his trial counsel that stated the following: "Despite having recused itself from the case, the CCPO continued to play an active role in the prosecution of my client throughout the trial." (Doc. 71, Ex. 20).

> To evaluate allegations of prosecutorial misconduct, we 'must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights.' *State v. LaMar*, [2002-Ohio-2128, ¶ 121]. . . . Because prosecutorial misconduct implicates due-process concerns, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Jones*, [2012-Ohio-5677, ¶ 200] . . ., quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). We 'will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even' absent the misconduct. *LaMar* at ¶ 121.

*State v. Smith*, 2023-Ohio-1670, ¶ 39 (8th Dist.), quoting *State v. Thompson*, 2014-Ohio-4751, ¶ 162.

{¶ 64} As an initial matter, the general assertion made in the affidavit from Azali's trial counsel does not provide any description of what the CCPO's "active role" in this case entailed. (Doc. 71, Ex. 20). In the absence of any evidence that

-26-

details how the CCPO allegedly participated in this case, Azali cannot establish how these alleged activities could have prejudicially affected his substantial rights. Thus, Azali has failed to explain how his trial was deprived of fairness such that he would not have been found guilty in the absence of this alleged misconduct. Since he has failed to set forth operative facts that establish substantive grounds for relief, the arguments regarding the ninth claim in the petition are without merit.

{¶ 65} *Tenth Claim*: Azali argues that the State committed a *Brady* violation when it failed to obtain the video recordings from his Blink security camera system before they were deleted from his cloud storage account in accordance with the retention policy of their third-party custodian. However, this exact argument was the basis of the motion to dismiss that Azali filed prior to his trial. The trial court denied this motion after concluding that the State did not "spoliate" or "deliberately withhold" these recordings. (Tr. 140-141).

{¶ 66} On direct appeal from his conviction, Azali's second assignment of error asserted "that the state committed a *Brady* violation by failing to obtain Blink security camera footage . . . from its third-party custodian." *Azali*, 2023-Ohio-4643, at ¶ 59 (8th Dist.). This Court found this argument to be without merit and overruled this assignment of error. *Id*. at ¶ 69-78. This argument was not only available for direct appeal but was raised on direct appeal. *See State v. McFeeture*, 2020-Ohio-801, ¶ 13-15 (8th Dist.).

{¶ 67} We are aware that, if a claim in a petition relies on evidence outside the original trial record, it is not barred by res judicata simply because "similar

claims have been previously raised and adjudicated against the petitioner in his direct appeal." *Blanton*, 2022-Ohio-3985, at ¶ 41. However, Azali's petition did not include any new evidence related to this argument. As a result, the trial court did not err in concluding that res judicata barred this argument. Thus, the arguments regarding the tenth claim in the petition are without merit.

**{¶ 68}** *Eleventh Claim*: Azali argues that his trial counsel was ineffective for failing to compel production of his phone so that an independent forensic analyst could determine whether the Blink security camera recordings could somehow be retrieved from this cellular device. However, Azali has not presented any evidence from outside the trial record that supports this argument or that would suggest that the recordings from the Blink security camera could somehow be found on his phone. In the absence of such information, Azali's petition merely speculates that his cellular phone *might possibly* contain recordings that *might possibly* contradict V.'s testimony. Such speculation is insufficient to present a triable issue of fact on this ineffective assistance of counsel claim.

**{¶ 69}** Further, the record makes clear that law enforcement seized Azali's phone at his arrest and had this device throughout this proceeding. As suggested by Azali's petition, the record does not contain any indication that his trial counsel sought to compel production of his phone to facilitate a forensic analysis. Based upon what is apparent from the trial record, Azali could have raised this argument on direct appeal from his conviction. As a result, the trial court did not err in

concluding that this argument was barred by res judicata. Thus, the arguments regarding the eleventh claim in the petition are without merit.

**{¶ 70}** In summary, Azali's arguments on appeal fail to establish that the trial court abused its discretion in dismissing the claims in his petition for postconviction relief. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶ 71}** Azali argues that the trial court erred by failing to hold an evidentiary hearing before dismissing his petition.

Legal Standard

**{¶ 72}** The filing of a petition for post-conviction relief does not "automatically require[]" the trial court to hold a hearing on the matters raised by the petitioner. *State v. Tenney*, 2021-Ohio-3676, ¶ 11 (8th Dist.). Rather,

> [b]efore granting a hearing on a timely filed motion for postconviction relief, the trial court must consider the petition, its supporting affidavits and documentary evidence, as well as 'all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript,' and must 'determine whether there are substantive grounds for relief.'

*Redmond*, 2024-Ohio-3404, at ¶ 20 (8th Dist.), quoting R.C. 2953.21(D). Consequently, a trial court does not err "in dismissing a petition without a hearing if (1) the petitioner fails to set out sufficient operative facts to establish substantive grounds for relief, or (2) the operation of res judicata prohibits the claims made in

the petition." *State v. Singleton*, 2025-Ohio-1735, ¶ 7 (8th Dist.), quoting *State v. Gondor*, 2006-Ohio-6679, ¶ 45.

Standard of Review

**{¶ 73}** "In postconviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *Gondor*, 2006-Ohio-6679, at ¶ 51. Thus, a trial court's decision to dispose of a petition for post-conviction relief in the absence of a hearing is reviewed for an abuse of discretion. *Grier*, 2025-Ohio-2529, at ¶ 4 (8th Dist.). An abuse of discretion is present where the trial court's determination is arbitrary, unreasonable, or unconscionable. *Dye*, 2021-Ohio-207, at ¶ 33 (8th Dist.).

Legal Analysis

**{¶ 74}** Under the first assignment of error, we considered the eleven claims raised in Azali's petition and determined that these arguments were either barred by res judicata or failed to set forth sufficient operative facts that established substantive grounds for relief. Thus, our prior analysis included the considerations that were relevant to determining whether the resolution of any of the eleven claims in this petition required an evidentiary hearing. On the basis of these prior analyses, we conclude that the trial court did not abuse its discretion in dismissing this petition without holding an evidentiary hearing. *See Duncan*, 2025-Ohio-2456, at ¶ 16-17 (8th Dist.). Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶ 75}** Azali argues that the trial court erred by failing to issue findings of fact and conclusions of law in deciding his petition.

Legal Standard

**{¶ 76}** R.C. 2953.21(D) states that, when a trial court dismisses or denies a petition for post-conviction relief that is timely filed, "it shall make and file findings of fact and conclusions of law with respect to such dismissal." *See Lewis*, 2026-Ohio-1202, at ¶ 9 (8th Dist.). The purpose of this requirement is to "apprise the petitioner of the basis for the court's disposition and facilitate meaningful appellate review." *State v. Bebee*, 2026-Ohio-1043, ¶ 10 (8th Dist.).

**{¶ 77}** Given these overarching purposes, a trial court's "findings of fact and conclusions of law should be 'explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision and enable it to determine the grounds on which the trial court reached its decision.'" *State v. Dudas*, 2024-Ohio-1358, ¶ 9 (8th Dist.), quoting *State v. Porter*, 2021-Ohio-4630, ¶ 19 (7th Dist.). Further, while the

> trial court need not discuss every issue raised by an appellant or engage in an elaborate and lengthy discussion, the findings need to be sufficiently 'comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion.'

*State v. Baldwin*, 2025-Ohio-1260, ¶ 19 (8th Dist.), quoting *Calhoun*, 86 Ohio St.3d 279, at 291-292 (1999). Further, a trial court is "not required to specifically title its

-31-

decision 'Findings of Fact and Conclusions of Law.'" *State v. Montgomery*, 2014-Ohio-4108, ¶ 17 (2d Dist.).

Standard of Review

{¶ 78} "Whether the trial court complied with the statutory requirement to issue findings of fact and conclusions of law under R.C. 2953.21 presents a question of law that we review de novo." *Lewis*, 2026-Ohio-1202, at ¶ 8 (8th Dist.). Under the de novo standard of review, appellate courts examine the record independently and do not give deference to the trial court's determination. *State v. Parker*, 2022-Ohio-1164, ¶ 9 (8th Dist.).

Legal Analysis

{¶ 79} In this case, the trial court issued a ten-page judgment entry to decide Azali's timely petition for postconviction relief. This entry identified all eleven claims that Azali had presented; provided a summary of the relevant facts in this case; and set forth the applicable legal standard. *See Lewis*, 2026-Ohio-1202, at ¶ 11 (8th Dist.) (relying on these considerations to find that a one-sentence judgment entry did not comply with R.C. 2953.21(D)). In its judgment entry, the trial court also made factual findings and reviewed the key arguments raised by Azali. After conducting various analyses, the trial court concluded that res judicata barred all eleven claims in Azali's petition.

{¶ 80} The contents of this judgment entry were sufficient to apprise the petitioner of the bases of the trial court's decision and to facilitate meaningful appellate review of this matter. Having examined the relevant materials in the

-32-

record, we conclude that the trial court issued findings of fact and conclusions of law in compliance with the requirements of R.C. 2953.21(D).  Accordingly, the third assignment of error is overruled.

*Conclusion*

**{¶ 81}**  Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.  The court finds there were reasonable grounds for this appeal.

***Judgment Affirmed***

**WILLAMOWSKI, J., ZIMMERMAN, J., and MILLER, J., concur.**

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
John R. Willamowski, Judge


_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge

DATED:
/hls

**Judges John R. Willamowski, William R. Zimmerman and Mark C. Miller, from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.**